## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NANCY LOZADA<br>Plaintiff, | Civil No. 20-1674 |
| v. | DISABILITY DISCRIMINATION (REHABILITATION ACT OF 1973); AGE DISCRIMINATION (ADEA); SEEKING INJUNCTIVE RELIEF AND DAMAGES |
| LOUIS DE JOY; POSTMASTER GENERAL<br>In his Official Capacity<br>INSURANCE COMPANIES X, Y, Z<br>Defendants | |
| | PLAINTIFF DEMANDS TRIAL BY JURY |

### COMPLAINT

**TO THE HONORABLE COURT:**

Comes now, plaintiff Nancy Lozada, "Lozada" or "plaintiff" through her undersigned attorney and respectfully states, alleges and prays:

### <u>NATURE OF THE ACTION</u>

This is a civil action for damages and other relief against Defendant Louis DeJoy, Postmaster General, under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., and under section 504, 29 U.S.C. § 794, in particular, as well as under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq. (ADEA), for the intentional adverse and discriminatory employment actions to which Lozada was subjected by defendants.

Plaintiff requests declaratory relief concerning the illegality of defendant's actions against plaintiff in the context of her employment, reinstatement order, compensation for plaintiff's suffering, emotional distress, and moral damages, loss of wages (including back pay), costs, interest, and reasonable attorney's fees.

1

## JURISDICTION AND VENUE

This Honorable Court has subject-matter jurisdiction to entertain the instant case pursuant to 28 U.S.C. Sec.1331.

This Court also has jurisdiction pursuant to 28 U.S.C. Sec 1332, to entertain plaintiff's state causes of action alleged herein, as the matters in controversy therein exceed the amount of $75,000.00, exclusive of interest and costs, and are between citizens of different states.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

Declaratory, injunctive, legal and equitable relief is sought pursuant to 28 U.S.C. 2201 and 2201, in connection with plaintiff's claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. Sec.12101 et seq., The Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. Secs. 2601, et seq., Puerto Rico Law No. 44 of July 2, 1985 ("Law 44"), as amended, 11 L.P.R.A. Secs. 501 et seq, Law No. 139 ("Law 139") of June 26, 1968 ("SINOT"), 11 L.P.R.A. Sec. 201 et seq., Law No. 115 ("Law 115") of December 20, 1991, 29 L.P.R.A. Sec. 194, et seq, as amended, and Law No. 80 ("Law 80") of May 30, 1976 (Severance), 29 L.P.R.A. Sec. 185a, et seq., as amended.

All conditions precedent to jurisdiction under 28 U.S.C. Sec. 626(e) have been complied with, specifically, a timely charge of employment discrimination (Charge No. 4B-006-0022-20) on the basis of disability and age was filed before the Equal Employment Opportunity Commission ("EEOC"), and on August 24, 2020, the EEOC issued a " Final Agency Decision" which was mailed to the Plaintiff and received by her on August 28, 2020 and by the undersigned attorney on August 31, 2020. This action is filed within the ninety

(90) days from receipt of the aforesaid EEOC notice.

Venue in the Federal Court for the District of Puerto Rico is proper because a substantial part of the events or omissions giving rise to the claim occurred in Puerto Rico. Plaintiff hereby demands trial by jury.

## THE PARTIES

### A. PLAINTIFF

1. Plaintiff ("Lozada") is a citizen of the United States and resident of 510 Jurel Vega Baja, PR 00693-5009.

2. She was born in 6/13/1969 and is currently 51 years old.

### B. DEFENDANT

3. Louis DeJoy is the United Sates Postmaster General of the United States Postal Service and is sued in his official capacity as such.

4. Co-defendants Insurance Companies X, Y, Z are insurance carriers duly organized or operating under the laws of Puerto Rico, which at all relevant times alleged herein, had in full force and effect one or more insurance policies, including employer's practice liability insurance, covering the legal liability of the US Postal Service.

## FACTS

5. At present, plaintiff is 51-year-old.

6. She occupies a full-time position with the U.S. Post Office as Carrier Technician.

7. Plaintiff's yearly base salary is $50,243.00.

8. On 6/11/2014, plaintiff suffered an injury to her right ankle while delivering mail.

9. She partially recovered from that injury and returned to a limited duty job at Bayamon

Branch, delivering mail on a mounted route.

10. On 12/04/2016, plaintiff returned to her regular carrier technician assignment which consisted of five walking routes at Loiza Station.

11. She immediately suffered pain and discomfort and informed it to her manager Erika Vazquez.

12. Vazquez replied that she could not help her because all the routes in that station were walking routes.

13. Subsequently, plaintiff visited her doctor who ordered an MRI which revealed a high-grade tear of anterior talofibular ligament and tenosynovitis.

14. Although injured, plaintiff was forced to continue working.

15. On December 23, 2016, while performing her duties, plaintiff fell and re-injured her right ankle and filed a new claim.

16. On January 12, 2017, her Orthro, Dr. Carrion, immobilized her right ankle, placing her in a cast until March 2, 2017.

17. Dr. Carrion does not work with OWCP cases.

18. March 10, 2017 was the last pay period plaintiff received income.

19. Subsequently, plaintiff received a letter dated March 31, 2017 from the US Department of Labor, OWCP, informing her that the direct deposit form was incomplete.

20. Later, she received a letter dated April 12, 2017 from the Department of Labor OWCP stating that her claim for sprain of tibiofibular ligament of right ankle traumatic injury on 12/23/2016 had been accepted.

21. On June 16, 2017, plaintiff received a letter from the US Department of Labor stating

4

that a nurse by the name of Elga Padilla, was assigned to her case.

22.  While plaintiff was trying to find an Orthro to treat her ankle, she received a letter from the US Postal Service dated August 7, 2017, stating that effective 2/22/2017 she would no longer have Health Benefits until she returned to work

23. Due to a combination of factors, including the closing of the medical clinic where she was receiving physical attention, and the unavailability of an Orthro that worked with OWCP, plaintiff was unable to get the medical attention needed to recover from her ankle injuries.

24. On August 21, 2017 in Elga Padilla's, report to the Department of Labor, she states that plaintiff needs urgent medical attention, notified that there were not any Ortho providers in PR that specialize in feet who accept OWCP, mentioned that plaintiff was not receiving income and asked the agency to act on her claims.

25.  Shortly after Hurricane Maria, Mrs. Padilla, resigned from plaintiff's case for personal reasons and the Department of Labor did not act on the situation of not having an Orthopedist to work with injured employees in Puerto Rico.

26. In order to continue with treatment to improve her condition and return to work, plaintiff had no other option but to request Government Health Benefits.

27.  On November 8, 2017 plaintiff's second claim was accepted by the Department of Labor, and assigned a new case number,  #027693536.

28. Again, plaintiff struggled to find a doctor that worked with OWCP in Puerto Rico.

29. Plaintiff contacted Health and Resources Manager Specialist Mayra Mendoza and asked for the list of doctors that worked with OWCP cases and she informed her that

she was not allowed to give that information.

30. It was not until April 16, 2018 that plaintiff was able to contact a doctor that worked with OWCP cases who agreed to treat her injuries.

31. After she began treatment, plaintiff tried to contact Mrs. Mayra Mendoza for several months, to inform her of the treatment she was receiving and to request a reasonable accommodation to return to work, to no avail.

32. At this point, plaintiff had partially overcome her injury.

33. Finally, plaintiff was able to contact Mendoza through Vega Baja's Postmaster at the time, Mr. Carlos Cabrera.

34. Mendoza asked whether plaintiff was ready to return to work without limitation, to which plaintiff responded she was not able, but that she was able to return with limited duties or reassigned to another position.

35. Mendoza replied that she would try to return her to work at the Vega Baja Post Office, that she was going to speak to the Postmaster Cabrera.

36. Mendoza instructed plaintiff to ask her doctor to complete a Duty Status Report (CA-17 Form).

37. After plaintiff returned the completed CA-17, on November 9, 2018 Cabrera, informed her that with the results, he would be unable to return her to work. He specifically texted her: "I'm very sorry but with that CA -17 I don't have work for you".

38. After that, defendant made no efforts to return plaintiff to any position.

39. The Postal Service has legal responsibilities to employee's with job-related disabilities under 5 U.S.C. 8151 and OPM regulations.

40. According to Reassignment or Reemployment of Employees Injured on duty, when an employee has partially overcome a compensable disability, the Postal Service has the obligation of making every effort toward assigning the employee to limited duty consistent with the employee's medically defined work limitation tolerance (see 546.611). In assigning such limited duty, the Postal Service should minimize any adverse or disruptive impact on the employee. The following considerations must be made in effecting such limited duty assignments.

    1. To the extent that there is adequate work available within the employee's work limitation tolerances, within the employee's craft, in the work facility to which the employee is regularly assigned, and during the hours when the employee regularly works, that work constitutes the limited duty to which the employee is assigned.

    2. If adequate duties are not available within the employee's work limitation tolerances in the craft and work facility to which the employee is regularly assigned within the employee's regular hours of duty, other work may be assigned within that facility.

    3. If adequate work is not available at the facility within the employee's regular hours of duty, work outside the employee's regular schedule may be assigned as limited duty. However, all reasonable efforts must be made to assign the employees to limited duty within the employee's craft and to keep the hours of limited duty as close as possible to the employee's regular schedule.

41. Plaintiff has made multiple unsuccessful attempts to obtain a work accommodation from defendant at the facility where she was assigned.

42. In addition, plaintiff has made multiple unsuccessful attempts to obtain a work accommodation for e-reassign to five different Post Offices.

43. On March 20, 2019, plaintiff received an Offer of Modified Assignment to work a (2.5) hour shift at Loiza Station, which is an hour and a half drive to and from her residence in Vega Baja.

44. One of the multiple accommodations plaintiff requested, was a reassignment transfer to the Vega Baja Office as an FTR sales/services, distribution associate, Level 6 position.

45. Due to her injury, plaintiff is limited from walking and driving for a period of more than six (6) hours, including travel time to and from her house.

46. Plaintiff is able to perform the duties of this position and any similar ones.

47. On October 2, 2019, she was denied the position, and the proffered reason was "unacceptable attendance, work and safety record".

48. The alleged unacceptable attendance record refers specifically to plaintiff's period she had been unable to work due to her injuries and to defendant's own inaction in providing her with an accommodation.

49. Therefore, defendant cannot utilize said attendance record against her and it is a pretext and a violation of its duty to accommodate her under the applicable laws.

50. After plaintiff's injury, defendant has hired multiple employees at the Vega Baja Post Office as CCA'S, PSE, PTF or have converted to regular employees.

8

51. All these positions qualify as limited or modified duties and plaintiff is able to perform them.

52. During the time Plaintiff has been out of work, defendant has hired two employees younger than 40 years old to positions in the Vega Baja Office, Pierre Rojas, who at the time was 30 years old, was hired on July 21, 2018 and Jose Marrero, who at the time was 28 years old, was hired on November 23, 2018.

53. The Vega Baja Office has no female carriers.

54. The following is a list of employees that have been hired at Vega Baja, Post Office as CCA'S, PSE, PTF or have converted to regular during the time plaintiff has been out of  work from 2017 to 2019:

| Name | Position | Dates hired as CCA's, PSE's PTF's or were converted to Regular | Age |
|---|---|---|---|
| Pierre Rojas | CCA | Hired July 21,2018 Transfer from Texas to Puerto Rico | 30 |
| Jose Marrero | CCA | Hired November 23, 2018. | 28 |
| Edgar Rodriguez | CCA | Turned regular. | 31 |
| Kevin Rodriguez | PTF | Turned PTF. | 30 |
| Julio Cruz | CCA | Turned regular. | 48 |
| Javier Oyola | PSE | Turned regular. | 35 |
| Rafaelgil Berrios | PSE | Distribution clerk. | 35 |
| Yadimel Cordona | PSE | Started to work at Vega Baja around July 2019 | 39 |
| Ramon Vallejo | PTF | Works for a different station and also work for Vega Baja as operational needs  window clerk. | 36 |
| Bermarie Rosado | Regular | Transfer from USA to Puerto Rico November 2019 | 35 |

55. On August 13, 2019, plaintiff was invited to an Accommodation Meeting with the

9

Caribbean District Accommodation Committee (RAC). There, the committee informed her that  within the following next four to six weeks, she would receive an answer of such decision.

56. On December 20, 2019, plaintiff filed a formal complaint to the Post Office's EEO.

57. During the entire time she had been out of work, she had not received any official letters from defendant. However, after filing the EEO complaint, she received a letter dated February 25, 2020 from the District Office which states she has been absent since December 24, 2016 and that she should indicate the type of leave she had requested.

58. Defendant has full knowledge of the reasons plaintiff has been absent.

59. Later on, plaintiff received a letter date June 18, 2020 signed by Edgar Quiles, Manager of the Loiza CCU Station, as a response to August 19, 2019 meeting.

60. The letter states that there are no possible reasonable accommodations for her "without violating the governing collective bargaining agreement"

61. Defendant has hired or transferred the following employees at the Vega Baja Office after plaintiff filed her EEO complaint

| Name | Position | Date Hired | Age |
|------|----------|------------|-----|
| Reymond Cuevas | CCA | 2020 | <40 |
| Luis Tirado | TCA | 2020 | <40 |
| Krystal Rivera | CCA | July 2020. | <40 |
| Samuel Rivera | TCA | July 2020. | <40 |
| Yamiel Zabaleta | CCA | July 2020. | <40 |
| Ramon Rios | TCA | 2020. | <40 |

10

62. Lozada has never violated any procedures and defendant has no disciplinary procedures against her.

63. Lozada had an unblemished personnel record, her job performance was exemplary, and never was the subject of unsatisfactory reports or negative evaluations from any of her immediate supervisors.

64. Defendant's actions have been a pretext to discriminate against Lozada because of disability, age and in retaliation for requesting reasonable accommodation and later on for filing an EEO complain.

65. A timely charge of employment discrimination based on disability and age was filed before the Post Office's EEOqual Employment Opportunity Commission ("EEOC") by Lozada.

66. The company's attorney during the EEOC's procedures admitted to Lozada that since his condition got worse, they could not continue waiting for him.

**FIRST CAUSE OF ACTION**
**(Disability Discrimination-Reasonable Accommodation, Failure to Accommodate ADA, 42 U.S.C. Secs. 12101 et seq.)**

67. Plaintiff hereby reiterates and reaffirm all previous statements and allegations.

68. The ADA prohibits discrimination against a "qualified individual" "because of" the individual's disability. Such prohibition includes any failure to make "reasonable accommodation" to the known physical and/or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. Secs. 12112(a) and 12112(b)(5)(A).

69. Plaintiff's injuries constituted a disability under the ADA.

70. Because of his disability, plaintiff was a qualified individual under the ADA.

71. Defendant has failed to provide a reasonable accommodation to plaintiff, although

there have been positions available to which she can be accommodated.

72. The referred conduct by defendant constitutes disability discrimination in violation of defedant's own regulations, the Rehabilitation Act and ADA provisions, which makes them liable for the remedies and damages afforded to Lozada under the ADA, including compensatory damages, in a sum not less than one hundred thousand Dollars ($100,000.00), and reinstatement of Lozada's employment.

73. Pursuant to ADA's provision, 42 U.S.C. Sec. 12205, Lozada is also entitled to be awarded costs, interest and attorney's fees incurred in this lawsuit.

**SECOND CAUSE OF ACTION**
**(Disability Discrimination - Retaliation, ADA, 42 U.S.C. Sec.12203 (a))**

74. Plaintiff hereby reiterates and reaffirm all previous statements and allegations.

75. The ADA also prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. Sec. 12203(a).

76. Defendant deliberately ignored Lozada's condition, a "disability" as defined by the ADA, which was informed and known by defendant. Requiring an accommodation is protected conduct for purposes of the ADA's retaliation provision.

77. In retaliation for the legal obligations that arose for defendant under the ADA, triggered by its knowledge and awareness of plaintiff's disability, defendant has deliberately sat down on her request, and has failed to accommodate her.

78. The referred adverse actions and retaliatory conduct by defendants, all proximately related sequentially in time, constitutes disability discrimination in violation of the ADA retaliation provision, and makes them liable for the remedies and damages afforded to

Lozada under the ADA's retaliation provision, including compensatory and punitive damages, in a sum not less than One Hundred Dollars ($100,000.00), and reinstatement of Lozada's employment.

**THIRD CAUSE OF ACTION**
**(Age Discrimination and Retaliation - ADEA)**

79.  Plaintiff hereby reiterates and reaffirm all previous statements and allegations.

80.  The same nucleus of facts that give rise to Lozada's First Cause of Action for disability discrimination because of her disability, based on his employer's failure to give her reasonable accommodation under the ADA, Sec. 12112 et seq., operate to also make his employer liable for violation of the provisions of the Age Discrimination in Employment Law.

81.  The same nucleus of facts that give rise to Lozada's Second Cause of Action for disability discrimination based on adverse actions and retaliatory conduct by defendants, all proximately related sequentially in time, in violation of the ADA retaliation provision, operate to also make his employer liable for violation of the retaliation provision of the Age Discrimination in Employment Law (ADEA).

82. As a result of defendants' illegal and discriminatory practices, as well as adverse actions and retaliatory conduct, which are in direct violation of ADEA, Lozada was physically, emotionally and mentally affected, such pain and suffering being subject to compensatory and punitive damages for which defendant is liable, in an additional sum not less than One Hundred Thousand Dollars ($100,000.00).

83. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, plaintiff respectfully request from this Honorable Court to issue the

13

following relief against Defendant:

    A.  That the Court provide the Plaintiff with a jury trial;

    B.  That judgment be entered in favor of the Plaintiff and against the Defendants;

    C.  Damages afforded to Lozada under the ADA, including compensatory damages, in a sum not less than One Hundred Thousand Dollars ($100,000.00).

    D.  Damages afforded to Lozada under the ADA's retaliation provision, including compensatory damages, in a sum not less than One Hundred Thousand Dollars ($100,000.00).

    E.  Damages afforded to Lozada under ADEA including compensatory and punitive damages, in a sum not less than One Hundred Thousand Dollars ($100,000.00).

    F.  Lost wages.

    G.  Reinstatement of Lozada's employment, and back pay, pursuant to the ADA.

    H.  That the Court award the Plaintiff reasonable attorney's fees and costs and interest; and

    I.  That the Court award such other financial or equitable relief as is reasonable and just.

**RESPECTFULLY SUBMITTED**.

In Caguas, Puerto Rico, this November 24th , 2020.


s/*Fredeswin Pérez-Caballero*
**Fredeswin Pérez-Caballero**
P.O. Box 723

14

Caguas, Puerto Rico 00726-0723
Telephone:    787-239-7226
USDC-PR 217803
e-mail: fpclaw@gmail.com