## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**NANCY LOZADA,**

*Plaintiff,*

v.

**LOUIS DEJOY, POSTMASTER GENERAL OF THE U.S. POSTAL SERVICE,**

*Defendant.*

**CIVIL NO. 20-1674 (DRD)**

### OPINION AND ORDER

Pending before the Court is Defendant, Louis DeJoy, Postmaster General for the United States Postal Service's (hereinafter, "USPS") *Motion for Partial Dismissal and for a More Definite Statement* (Docket No. 7).[1] A *Response in Opposition* thereto was filed by Plaintiff, Nancy Lozada. See Docket No. 12. A *Reply* ensued shortly thereafter. See Docket No. 15.

Upon review, and for the reasons stated herein, the Court hereby **GRANTS** the Defendant's *Motion for Partial Dismissal and for a More Definite Statement* (Docket No. 7).

### I.    INTRODUCTION

Plaintiff filed a civil action for damages pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* (hereinafter, "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and under 29 U.S.C. § 794 in particular, and the Age Discrimination in Employment Act of

---

[1] The USPS filed its *Motion to Dismiss* on June 21, 2021. As Plaintiff failed to oppose within the deadlines established by the rules and the Court, the Defendant requested its dispositive motion be deemed as unopposed. See Docket No. 8. Shortly thereafter, Lozada requested an untimely extension to file a response. See Docket No. 10. Although no good cause was shown for the untimely request, the request was granted in the best interest of justice. See Docket No. 11.

1967, 29 U.S.C. §§ 621, *et seq.* (hereinafter, "ADEA"), "for intentional adverse and discriminatory employment actions to which Lozada was subjected by defendants." <u>Complaint</u>, Docket No. 1 at p. 1. Lozada requests declaratory relief as to the alleged illegality of USPS's actions regarding "her employment, reinstatement order, compensation of [her] suffering, emotional distress, and moral damages, loss of wages (including back pay), costs, interest, and reasonable attorney's fees." <u>Id.</u> Several Puerto Rico statutes were also raised.

Essentially, Lozada alleges that she was subject to discrimination on the basis of her age, (40+) when the Defendant failed to accommodate her in a position in favor of employees younger than 40 years old. As a result thereof, she was retaliated after requesting a reasonable accommodation. <u>See</u> <u>id.</u>

## II.     FACTUAL AND PROCEDURAL BACKGROUND

As stated in the *Complaint*, Lozada is a 52-year-old female who was born on June 13, 1969 and is a full-time Carrier Technician for the USPS. <u>Id.</u> at ¶¶ 2, 6. On June 11, 2014, Plaintiff suffered an injury to her right ankle while delivering mail. <u>Id.</u> at ¶ 8. Upon partially recovering, she returned to a limited duty job at the Bayamón station, delivering mail on a mounted route. <u>Id.</u> at ¶ 9. By December 4, 2016, Lozada returned to her regular carrier technician assignment, which consisted of five (5) walking routes at the Loíza station. <u>Id.</u> at ¶ 10. Shortly thereafter, as Plaintiff began experiencing pain and discomfort, she informed the situation to her manager, Erika Vazquez. According to Lozada, Vazquez was unable to help her because all the routes in the Loíza station are walking routes. *Id.* at ¶¶ 11-12. Subsequently, Plaintiff visited her doctor who ordered an MRI which revealed a high-grade tear of anterior talofibular ligament and tenosynovitis. <u>Id.</u> at ¶ 13. She continued working until December 23, 2016, when she fell while performing her duties,

re-injuring her right ankle, and was placed in a cast until March 2, 2017. Id. at ¶¶ 15-16. A claim was filed as a result thereof. Id. at ¶ 15. The DOL OWCP accepted Lozada's claims for benefits on April 12, 2017, and November 8, 2017, respectively. Id. at ¶¶ 20-27.  Plaintiff began receiving treatment with a doctor that worked with OWCP cases and who agreed to treat her injuries on April 16, 2018. Id. at ¶ 30. Between then and November of 2018, Plaintiff allegedly attempted to return to work with limited duties by requesting a reasonable accommodation through Mayra Mendoza. Id. at ¶¶ 31-37. However, according to Plaintiff, Vega Baja Postmaster, Carlos Cabrera informed her that he was unable to offer her any work considering her doctor's Duty Status Report, Form CA-17. Id. at ¶¶ 36-37. Although Plaintiff claims that she has made multiple unsuccessful attempts to obtain a work accommodation, on March 20, 2019, she received an Offer of Modified Assignment to work a (2.5) hour shift at the Loíza Station, but instead requested a reassignment to the Vega Baja office, as it is closer to her home. Id. at ¶¶ 41-44. Specifically, Plaintiff requested a reassignment transfer to the Vega Baja Office as an FTR sales/services, distribution associate, Level 6 position. Id. at ¶ 44. But on October 2, 2019, she was denied the position because of her "unacceptable attendance, work and safety record." Id. at ¶ 47.

Plaintiff's discrimination claims stem from the fact that the USPS has allegedly hired or converted to regular, multiple employees at the Vega Baja Post Office after her injury, and most of them are under 40 years of age. Id. at ¶¶ 50-52. On August 13, 2019, Plaintiff was invited to an Accommodation Meeting with the Case Caribbean District Reasonable Accommodation Committee (hereinafter, "DRAC"). Id. at ¶ 55. Eventually, Plaintiff made initial contact with the USPS's EEO counselor and as a result thereof, on December 20, 2019, she filed a formal complaint

to the Post Office's EEO. Id. at ¶ 56; see also, Docket No. 7, Exhibit 1 at p. 3.[2] In the EEO Complaint, the following claims as to discrimination based on sex (female), age, retaliation, and disability were raised:

1) Beginning on March 10, 2017, she did not receive compensation from the Office of Workers Compensation Program (OWCP).
2) On August 7, 2017, she received a letter stating effective February 22, 2017, her health benefits would be cancelled.
3) In October of 2018, she was not told there was no work available within her restrictions.
4) On October 2, 2019, she received notification that the modified job offer as a clerk in Vega Baja was denied due to her attendance and safety record.

See Docket No. 7, Exhibit No. 2 at pp. 1-2. On January 9, 2020, the EEO issued a *Partial Acceptance/Partial Dismissal of Formal EEO Complaint* accepting only Claim Four for investigation. Claims One, Two and Three were deemed untimely as Plaintiff failed to seek EEO counselling within 45 days of the event which led to the complaint. Particularly, Claims One and Two were also dismissed for lodging an impermissible collateral attack on another forum, namely, the DOL's OWCP and the OPM, respectively. Id. at pp. 6-7. Although the document advised that "[i]f you do not agree with the defined accepted issue(s), you must provide a written response specifying the nature of your disagreement within seven (7) calendar days of receipt of this letter to the EEO Services Analyst . . .," Plaintiff failed to do so.

---

[2] Generally, among the documents that may be considered as part of a motion to dismiss for failure to state a claim, by exception, are "documents the authenticity of which are not disputed by the parties, official public records, documents central to plaintiff's claim, or documents sufficiently referred to in the complaint." Blue Ocean Int'l Bank LLC v. Golden Eagle Cap. Advisors, Inc., 408 F. Supp. 3d 57, 61 n. 2 (D.P.R. 2019) (*citing* Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)). Therefore, the Court may consider the exhibits produced by the Defendant, as they consist of Plaintiff's administrative records which are documents relied upon or incorporated by reference in the *Complaint*, as well as contained in Plaintiff's official record with the USPS.

Lozada further alleges that multiple employees have been hired or transferred to the Vega Baja station after she filed her EEO complaint. See Docket No. 1 at ¶ 61. However, on June 18, 2020, she was informed by Edgar Quiles, Manager of the Loíza CCU Station that there are no possible reasonable accommodations for her "without violating the governing collective bargaining agreement." Id. at ¶¶ 59-60.

Likewise, Plaintiff claims that she has never violated any procedures and Defendant has no disciplinary procedures against her. Id. at ¶ 62. In fact, she alleges to have an unblemished personnel record, her job performance was exemplary, and never was subject of unsatisfactory reports or negative evaluations from any of her immediate supervisors. Id. at ¶ 63. Instead she attributes her absences to her inability to work due to her injuries and to the Defendant's alleged inaction in providing her with an accommodation. Id. at ¶ 48.

Considering the aforementioned, on November 24, 2020, Plaintiff filed the instant claim of disability, age discrimination and retaliation seeking compensatory damages, backpay, reinstatement, and attorney's fees and costs. Plaintiff further claims to be a qualified disabled individual who was subject to discrimination by USPS failing to provide her with a reasonable accommodation. Id. at ¶¶ 70-71. According to Plaintiff, the USPS failed to accommodate her in retaliation for engaging in the protected conduct of requesting an accommodation and said action violates ADEA's age discrimination and retaliation provisions. Id. at ¶¶ 76-77, 80-81.

Although Plaintiff is also seeking relief for punitive damages, such claims must be disregarded, as punitive damages are not recoverable against the "government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1). More specifically, sister court for the

District of Maine has found that "the Postal Service is 'part of the Government', [and] [] is entitled to § 1981a(b)(1) immunity." <u>Oakstone v. Postmaster Gen.</u>, 397 F. Supp. 2d 48, 61 (D. Me. 2005).

The USPS now moves to dismiss Lozada's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure "for failure to exhaust administrative remedies prior to filing the above-captioned claim and for failure to state a claim for which relief can be granted." Docket No. 7 at p. 6. In *Opposition*, Plaintiff argues that she has presented a plausible claim upon which relief can be granted under ADA and the Rehabilitation Act. More specifically, "[s]ince the same standards apply to both the Rehabilitation Act and ADA, the court when analyzing the allegations, relies on precedent construing both statutes. The Court, therefore, must treat Plaintiff's claims as arising under the Rehabilitation Act." Docket No. 12 at pp. 3-4 (citations omitted).

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." <u>See</u> <u>Ocasio–Hernandez v. Fortuño–Burset</u>, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' ") (*quoting* <u>Twombly</u>, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). <u>Id.</u> at 570; <u>See</u> <u>e.g.</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action.  See Iqbal, 556 U.S. at 677–679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint [,]" discarding legal conclusions, conclusory statements, and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir.2009) (quoting Iqbal, 556 U.S. at 678) (quoting Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 556 U.S. at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. Id.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sánchez v. Pereira–Castillo, 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore,

such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 682 (*citing* Twombly, 550 U.S. at 567).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir.2010) (*citing* Twombly, 550 U.S. at 556); Ocasio–Hernández, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. at 679); See Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotation marks omitted); See Ocasio–Hernández, 640 F.3d at 12 (*citing* Twombly, 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda–Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert–Rosa v. Fortuño–Burset, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; See Iqbal, 556 U.S. at 681 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of [the] allegations, rather than their

extravagantly fanciful nature, that disentitles them to the presumption of truth."); <u>See</u> <u>Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.</u>, 621 F.3d 10, 14 (1st Cir.2010) (the <u>Twombly</u> and <u>Iqbal</u> standards require District Courts to "screen[ ] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. <u>Ocasio–Hernández</u>, 640 F.3d at 12 (<i>citing</i> <u>Sánchez v. Pereira–Castillo</u>, 590 F.3d 31, 49 (1st Cir.2009)).

## IV.    LEGAL ANALYSIS

### A.    *Plaintiff's recourse under ADA as a federal employee*

Plaintiff's First and Second Causes of Action seek redress pursuant to ADA as to disability discrimination, specifically, reasonable accommodation, failure to accommodate, and retaliation, respectively. <u>*See*</u> Docket No. 1 at ¶¶ 67-78. As correctly asserted by the Defendant, "all claims of employment discrimination must be brought under the statutory scheme designed by Congress to proscribe the same." Docket No. 7 at p. 7.

Generally, "[t]he ADA and Rehabilitation Act prohibit discrimination against an otherwise qualified individual based on his or her disability. Therefore, "the case law construing the ADA applies equally to claims raised under the Rehabilitation Act." <u>Alvarado v. Potter</u>, 813 F. Supp. 2d 247, 252 (D.P.R. 2011), *aff'd sub nom.* <u>Alvarado v. Donahoe</u>, 687 F.3d 453 (1st Cir. 2012) However, "[t]he ADA is not available to federal employees." <u>Calero-Cerezo v. U.S. Dep't of Just.</u>, 355 F.3d 6, 11 n. 1 (1st Cir. 2004) (*quoting* <u>Rivera v. Heyman</u>, 157 F.3d 101, 103 (2d Cir. 1998)). The Rehabilitation Act, the precursor to the ADA, applies to federal agencies, contractors, and recipients of federal financial assistance, while the ADA applies to private employers with over 15 employees and state and local governments. <u>Id.</u> at 19. <u>See</u> <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820 (1976); <u>Torres-Medina v. Dep't of the Army</u>, No. 15-2085, 2016 WL 4179885 at *3 (D.P.R.

Aug. 4, 2016) (holding that "[t]he Rehabilitation Act is not only 'the judicial avenue appropriate for a federal employee's disability discrimination allegation, … [but also] the exclusive remedy for [Plaintiff's] disability discrimination claim … .'") (internal citations omitted). Therefore, the Rehabilitation Act provides the exclusive remedy in a federal employee setting.

The Rehabilitation Act prohibits discrimination against an otherwise qualified individual based on his disability for an executive agency. See 28 U.S.C. §§ 791 *et seq.* "[F]ederal statutes barring discrimination based on disability do more than merely prohibit disparate treatment; they also impose an affirmative duty on employers to offer a 'reasonable accommodation' to a disabled employee. Calero-Cerezo, 355 F.3d at 19-20 (*quoting* García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 n.9 (1st Cir. 2000). "The Rehabilitation Act [also] prohibits retaliation against employees for complaining about violations to the Act." Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir. 2006); see Coons v. Sec'y of the Treasury, 383 F.3d 879, 887 (9th Cir. 2004).

Under the Rehabilitation Act, "[a] plaintiff may raise both a failure to accommodate claim and a retaliation claim … ." Rodriguez v. Dep't of the Army, No. CV  16-1000 (MEL), 2018 WL 4638216 at *2 (D.P.R. Sept. 24, 2018). Furthermore, "[a]s evidenced by the language of the statute, the Rehabilitation Act applies to federal agencies, contractors, and recipients of federal financial assistance, while the Americans with Disabilities Act applies to private employers with over fifteen employees and to state and local governments. Id.; see Calero-Cerezo, 355 F.3d at 19. "Finally, the ADA provides no remedy to federal employees. … Instead, the Rehabilitation Act covers those employees." Dorsey v. Kelly, No. CV 17-1542 (PAD), 2017 WL 571268, at *4 (D.P.R. Nov. 28, 2017) (internal citations omitted). Therefore, the Court finds that the proper and <u>only</u>

vehicle to seek redress from discrimination and retaliation is by the federal employee filing his claim under the Rehabilitation Act, as prescribed by Congress when approving the applicable statutes.

Consequently, as the Rehabilitation Act is the proper statutory provision under which Plaintiff could raise any claim of discrimination or retaliation based on disability, the First and Second Causes of Action under ADA must be dismissed with prejudice, as requested by the USPS.

**B.      *Does Plaintiff properly allege to be a qualified individual with a disability?***

As previously discussed, the Rehabilitation Act prohibits discrimination against an otherwise qualified individual based on his disability for an executive agency. See 28 U.S.C. §§ 791 *et seq.* "[F]ederal statutes barring discrimination based on disability do more than merely prohibit disparate treatment; they also impose an affirmative duty on employers to offer a 'reasonable accommodation' to a disabled employee. Calero-Cerezo, 355 F.3d at 19-20 (*quoting* García-Ayala, 212 F.3d at 646 n.9 (1st Cir. 2000)). Plaintiff "bears the initial burden of proving each element of [her] claim for disability discrimination." Alvarado v. Potter, 813 F. Supp. 2d at 253.

Therefore, in order "[t]o assert a claim for failure to accommodate under the Rehabilitation Act, [Plaintiff] would have to establish the following: (1) that she suffered from a 'disability' within the meaning of the statute; (2) that she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation; and (3) that, despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for the disability." Calero-Cerezo, 355 F.3d at 20. See Enica v. Principi, 544 F.3d 328, 338 (1st Cir. 2008); Collins v. Antilles Consol. Schools, No. CV 10-

1037 (JAG-CVR), 2011 WL 8194765, at *8 (D.P.R. October 19, 2011). "To establish a qualifying disability, the plaintiff has the burden of proving 1) that he or she suffers a physical or mental impairment; 2) that the 'life activity' limited by the impairment qualifies as 'major'; and 3) that the limit imposed on the plaintiff's major life activity is substantial." Acevedo v. Potter, No. CV 08-1468 (DRD), 2011 WL 7092592 at *7 (D.P.R. March 23, 2011) (citing Rolland v. Potter, 492 F.3d 45, 48 (1st Cir. 2007)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

The USPS argues that "Plaintiff fails to allege what physical impairment substantially limited what major life activity." Docket No. 7 at p. 10. According to the Complaint, Plaintiff suffered two (2) right ankle injuries, but no information has been provided as to her disability. See Comp., ¶¶ 8, 15. However, the "definition of a disability is broad, but by no means unlimited." Signore v. Rhode Island, No. CV 17-526 WES, 2018 WL 3145835, at *1 (D.R.I. June 27, 2018) (citing Orr v. City of Rogers, 232 F. Supp. 3d 1052, 1064 (W.D. Ark. 2017). "In fact, several courts have granted motions to dismiss where the plaintiff's alleged disability was not covered by the ADA." Signore, 2018 WL 3145835 at *1. See, e.g., Zick v. Waterfront Comm'n of New York Harbor, No. CV 11 5093(CM), 2012 WL 4785703, at *5 (S.D.N.Y. Oct. 4, 2012) (holding that "Plaintiff's broken leg is simply not an injury considered a 'disability' under the ADA."). Therefore, making a "vague assertion" that "Plaintiff's injuries constituted a disability" (Comp., ¶ 69) will not suffice, as the requirements for disability are clearly prescribed by law. Signore, 2018 WL 3145835 at *1.

According to Plaintiff, "[d]ue to her injury, [she] is limited from walking and driving for a period of more than six (6) hours, including travel time to and from her house." Comp., ¶ 45. Besides the time limitation raised in the *Complaint*, Plaintiff fails to identify what major life activity is substantially limited by her impairment, as required by case law. Failing to identify a major life activity that has been limited due to her disability other than limitation from walking and driving for a period of more than six (6) hours is fatal to Plaintiff's case, as some inability to walk does not represent a substantial limitation on a major life activity. Let's see.

"[A] number of courts have held that the inability to walk, stand, or sit continuously for more than one to two hours does not constitute a handicap." Casanova v. Wyndham Grand Rio Mar Beach Resort & Spa, 205 F. Supp. 3d 220, 232 (D.P.R. 2016). For instance, the First Circuit has found that although "walking is considered a major life activity," delivering mail for at least two (2) hours per day is not a substantial limitation to a major life activity." McDonough v. Donahoe, 673 F.3d 41, 47 (1st Cir. 2012); see e.g., Neal v. Kraft Foods Global, Inc., 39 Fed.App'x. 632, 634 (9th Cir 2010) (holding evidence that plaintiff could only walk (4) hours per day insufficient to demonstrate she's disabled as a matter of law). Similarly, other courts have found that "[s]ome limitation in walking [in certain circumstances] … do[es] not equate to a substantial limitation in [the] ability to walk." Israelitt v. Enter. Servs. LLC, No. CV SAG-18-1454, 2021 WL 795150, at *6 (D. Md. Mar. 2, 2021) (*citing* Frogge v. Fox, No. CV 17-155, 2019 WL 2418749, at *6 (N.D.W. Va. June 10, 2019); see also Fink v. Richmond, 405 Fed. App'x 719 (4th Cir. 2010) (finding that Plaintiff's disability does not substantially limit her ability to walk but only affects her ability to walk quickly); Hailey v. Donahoe, No. CV 11-0022, 2012 WL 4458451, at *10 (W.D. Va. July 30, 2012), *aff'd*, 499 F. App'x 327 (4th Cir. 2012) (finding that "reasonable jurors could not conclude

that the inability to walk for more than four hours per day represents a substantial limitation on a major life activity."); <u>Garvin v. Potter</u>, 367 F.Supp.2d 548, 562 (S.D.N.Y. 2005) (finding that plaintiff's inability to walk quickly or to walk for over eight (8) hours is not a substantial limitation on a major life activity. Therefore, plaintiff did not fall within the meaning of a "disabled person" pursuant to the Rehabilitation Act.); <u>Lyons v. Louisiana Pacific Corp.</u>, 217 F.Supp.2d 171, 178 (D. Me. 2002) (holding that in order to determine whether a major life activity is substantially limited, plaintiff must produce evidence that the inability to walk long distances was worse than the general populations' inability to walk such distances. Therefore, "it is imperative that [Plaintiff] do more than merely assert he had difficulty walking.")

In the *Complaint*, Plaintiff only alleges that "[d]ue to her injury, [she] is limited from walking and driving for a period of more than six (6) hours, including travel time to and from her house." <u>Comp.</u>, ¶ 45. Yet, from the above-mentioned case law, being able to walk and drive for a maximum of six (6) hours in a day is insufficient to establish a substantial limitation of a major life activity. Taking the allegations in light most favorable to Plaintiff, the *Complaint* still falls short in establishing a physical impairment which substantially limits a major life activity in Plaintiff's life. Therefore, claims as to disability discrimination fail and must be therefore dismissed for failure to state a claim for which relief can be granted.

## C.    *Exhaustion of Administrative Remedies*

Generally, an employee must exhaust administrative remedies before filing a discrimination suit before the federal court. The action "may extend as far as, but not beyond, the parameters of the underlying administrative charge. This does not mean that the scope of the suit is inevitably limited to the allegations in the administrative complaint, but it is

nonetheless constrained by those allegations in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency." <u>Jorge v. Rumsfeld</u>, 404 F.3d 556, 565 (1st Cir. 2005) (internal citations omitted). Failing to do so, deprives the EEOC from its ability to resolve disputes "in the conference room rather than in the courtroom." <u>Id.</u>  Therefore, "[i]n order to serve the purposes of the administrative exhaustion requirement—prompt notice to the agency and an opportunity for early resolution, —'the factual statement in [the] written charge should have alerted the agency to [the] alternative basis of discrimination' that the plaintiff raises for the first time in court." <u>Velazquez-Ortiz v. Vilsack</u>, 657 F.3d 64, 71 (1st Cir. 2011) (internal citations omitted).

"The purpose of the exhaustion of administrative remedies requirement is 'to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation.'" <u>Hernandez-Stella v. Shinseki</u>, 978 F. Supp. 2d 105, 112 (D.P.R. 2013) (*citing* <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d 456, 464 (1st Cir.1996)). Therefore, "creating a dispute resolution system that requires a complaining party to pursue administrative relief prior to court action, [] encourag[es] [a] quicker, less formal, and less expensive resolution of disputes within the Federal Government and outside of court." <u>West v. Gibson</u>, 527 U.S. 212, 218–19, 119 S. Ct. 1906, 1910, 144 L. Ed. 2d 196 (1999). The prerequisite of exhaustion of remedies is even more determinative as to federal employees. Specifically, the First Circuit has held that "[t]his exhaustion requirement is no small matter; it is a condition to the waiver of sovereign immunity and thus must be strictly construed." <u>Vazquez-Rivera v. Figueroa</u>, 759 F.3d 44, 48 (1st Cir. 2014) (*citing* <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 94, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

"Similarly, the Rehabilitation Act requires exhaustion of administrative remedies for employees of federal agencies. This requirement is derived from 29 U.S.C. § 794a(a)(1), providing that federal agency employees must exhaust administrative remedies in accordance with the requirements of Title VII." Hernandez-Stella, 978 F. Supp. 2d. at 112 (citing Roman-Martinez v. Runyon, 100 F.3d 213, 216, (1st Cir. 1996). In effect, "[t]he Rehabilitation Act does not establish its own procedures for claims of discrimination brought under Section 501, 29 U.S.C. § 791. … Rather, it incorporates the procedures set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Murphy v. Mattis, No. 2:14-CV-00400-JAW, 2017 WL 1157086, at *27 (D. Me. Mar. 27, 2017) (citing Vazquez-Rivera v. Figueroa, 759 F.3d 44, 47 (1st Cir. 2014). For that reason, "[f]ederal employees alleging discrimination in violation of … the Rehabilitation Act … must follow the process outlined in 29 C.F.R. §§ 1614.101-1614.110." Hernandez-Stella, 978 F.Supp.2d. at 113. "Failure to exhaust [administrative remedies] bars a federal employee's Rehabilitation Act claims against the federal agency." Id. at 112.

Pursuant to the *Complaint*, Plaintiff failed to timely exhaust administrative remedies within the time frame provided by 29 C.F.R. § 1614.105. Some of the alleged discriminatory acts occurred more than 45 days prior to the date in which Lozada contacted the EEO counselor. Therefore, the only discriminatory claims that can survive dismissal are those which were properly informed to the EEO counselor within 45 days of the event. The Court explains in detail.

Generally, "[a]n aggrieved person must initiate contact with an [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within said time frame of the effective date of the action." 21 C.F.R. § 1614.05(a)(1). Failure to contact the EEOC Counselor within said 45 days prevents the employee from bringing a claim in

16

court. See Velazquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000); see also, Roman-Martinez v. Runyon, 100 F.3d 213, 216-18 (1st Cir. 1996) (holding that an employee's failure to contact an EEOC counselor within the proscribed statute of limitations results in losing his right to later pursue an action in court).

Discrete acts of discrimination have been defined as "events [which] constitute specific employment occurrences with the potential for concrete adverse consequences on plaintiff's employment status." Rojas v. Principi, 326 F. Supp. 2d 267, 276 (D.P.R. 2004). Title VII claims are based on discrete acts of discrimination, such as, "failure to renew contract, failure to hire for new position, suspensions from employment, deprivation of duties, failure to select plaintiff for unannounced employment positions, written counseling, and proposed admonishments and reprimands." Lugo v. Avon Prod., Inc., 777 F. Supp. 2d 275, 287 (D.P.R. 2011). Several principles are applicable, for instance: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002). Furthermore, "[t]he existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." Id. at 106. Nonetheless, "this time period for filing a charge is subject to equitable doctrines such as tolling or estoppel. Courts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly." Id. (internal citations omitted).

Essentially, "[a]n employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice of the needed accommodation. If the request is refused, the refusal is a discrete discriminatory act triggering the statutory limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 129 (1st Cir. 2009) (internal citations omitted) (emphasis ours). "By contrast, the denial of a disabled employee's request for accommodation starts the clock running on the day it occurs." Id. at 130.

As previously mentioned, Plaintiff failed to comply with this regulation in some of the claims raised in the *Complaint*, which in turn, warrant their dismissal as time barred. Pursuant to Lozada's administrative record, she first contacted the EEO Counselor on November 4, 2019. See Docket No. 7, Exhibit 1 at p. 3. Any claim which took place beyond 45 days before that date, namely, before September 20, 2019, is untimely. Therefore, upon evaluating the allegations, the Court finds that the only claim that was timely filed during the administrative proceedings was related to the October 2, 2019 notification where Lozada was informed the denial of her reassignment request for a clerk position in Vega Baja. See Docket No. 7, Exhibit 2.

Once the *Partial/Acceptance/Partial Denial letter* dated January 9, 2020, was issued, Plaintiff was notified of the opportunity to set forth in writing the basis for her disagreement as to said determination within seven (7) days. Yet, no statement of disagreement was filed as to the partial dismissal of some of her claims as untimely albeit she was represented by counsel in the administrative proceedings. Id. at p. 2. "In finding that Plaintiff has failed to exhaust her administrative remedies, the Court is also influenced by Plaintiff's failure, when she was

represented by counsel, to voice any disagreement with the framing of the issue by the EEO …"
Sellers v. U.S. Dep't of Def., C.A. No. 07-418S, 2009 WL 559795, at *13 (D.R.I. Mar. 4, 2009).

In turn, Plaintiff also failed to file an administrative claim as to her Loíza station supervisor's June 18, 2020, decision denying Lozada's request for a reasonable accommodation. See Comp. Docket No. 1, ¶¶ 59-60; Exhibits 1 and 2. The Code of Federal Regulations clearly provides that "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614-106(d). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp., 536 U.S. at 102. As this is a "personnel action," "a new clock for filing charges alleging the act" was activated for purposes of the administrative exhaustion requirement. Lugo, 77 F.Supp. 2d at 287. By not amending her administrative complaint or filing a separate EEO complaint within the 45-day proscribed period, the June 28, 2020 claim is also time barred. Failing to timely file an administrative claim deprives the agency from properly investigating the claim prior to a civil action.

### C.    *ADEA Retaliation claim*

In the *Complaint*, the Third Cause of Action is for age discrimination and retaliation claims under ADEA. See Comp. at p. 13. However, the Defendant argues that "Plaintiff fails to allege she engaged in ADEA-protected conduct or suffered a casually-related adverse employment action thereafter." Docket No. 7 at p. 17. Yet, according to Lozada, the USPS is also liable for violation of the provisions of ADEA based the same nucleus of facts in her First Cause of Action for disability discrimination due to the employer's failure to provide reasonable accommodation, and the

Second Cause of Action for disability discrimination based on adverse action and retaliatory conduct, both under ADA. See Comp. at ¶¶ 80-81. The Court agrees with the Defendant and briefly explains.

The ADEA provides in its pertinent part that, "[i]t shall be unlawful for an employer to discriminate against any of his employees … because such individual … has opposed any practice made unlawful by this section, or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]. 29 U.S.C. § 623(d). However, the ADEA also "protects individuals who invoke the statute's protections." Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 84 (1st Cir. 2005). Essentially, ADEA "prohibit[s] an employer from taking adverse employment action against employee because of her protected activity." González-Bermúdez v. Abbott Laboratories P.R. Inc., 990 F.3d 37, 46 (1st Cir. 2021). Accordingly, in order to establish a retaliation claim pursuant to ADEA, "the plaintiff must make a *prima facie* showing that (i) [s]he engaged in ADEA-protected conduct, (ii) [s]he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991).

As previously mentioned, Plaintiff alleges that she engaged in protected conduct by "[r]equiring an accommodation." Comp., at ¶ 76. However, "attempts to secure accommodations for [] disabilities are clearly irrelevant to [an] ADEA retaliation claim." Abraham v. Brennan Postmaster Gen., No. CV 18-1192 (RJC), 2020 WL 6151161, at *23 (W.D. Pa. Oct. 20, 2020). Because the only adverse employment action complained by Lozada was the USPS's failure to accommodate her due to her injury, said claim will not stand, as it is unrelated to her complaint

for age discrimination. Consequently, a dismissal is warranted as Plaintiff failed to allege an adverse employment action that is causally related to her ADEA-protected conduct.

**D.    *Plaintiff's state law claims***

In the *Complaint*, Plaintiff seeks "declaratory, injunctive, legal and equitable" relief pursuant to several state laws, namely: "Puerto Rico Law No. 44 of July 2, 1985 ("Law 44"), as amended, 11 L.P.R.A. Secs. 501 *et seq*, Law No. 139 ("Law 139") of June 26, 1968 ("SINOT"), 11 L.P.R.A. Sec. 201 *et seq.*, Law No. 115 ("Law 115") of December 20, 1991, 29 L.P.R.A. Sec. 194, *et seq*, as amended, and Law No. 80 ("Law 80") of May 30, 1976 (Severance), 29 L.P.R.A. Sec. 185a, *et seq.*, as amended." Comp. at p. 2. However, the Rehabilitation Act and ADEA are the only available remedies for a federal employee as they have a "preclusive effect as the exclusive judicial remedy for claims of discrimination in federal employment." Vizcarrondo-González v. United States Department of Agriculture (USDA), No. CV 16-2461 (PAD), 2017 WL 3242246 at *2 (D.P.R. July 28, 2017) (*citing* Brown v. Gen. Servs. Admin., 425 U.S. 820, 834-835 (1976)). Likewise, the First Circuit has found that "[t]he ADEA provides the exclusive federal remedy for age discrimination in employment." Tapia-Tapia v. Potter, 322 F.3d 742, 745 (1st Cir. 2003). Therefore, in the absence of a specific statutory authorization, the Court is precluded from entertaining claims pursuant to Puerto Rico law on the basis of age and disability discrimination, and accordingly, a dismissal is warranted.

**E.    *USPS's request for a more definite statement***

Lastly, the USPS is requesting clarification as to "the medical condition and limited major life activity that renders Plaintiff disabled pursuant to the Rehabilitation Act, as well as the dates of all the adverse employment actions alleged." Docket No. 7 at p. 20. Likewise, Defendant argues

that "Plaintiff's Complaint includes time-barred events and actions taken by different federal agencies, such as OPM and OWCP/DOL … ." Id.

After a careful review of the pleadings, the Court fully agrees with the request from the USPS. The Court finds that the instant *Complaint* is vague in the matters raised by the Defendant, such as, "(1) the Plaintiff's claims and theories for relief and their supporting facts, (2) the identity of the actors and (3) the dates of the relevant events." Id. Although the Rehabilitation Act is slightly mentioned in the *Complaint*, the causes of action are related to the ADA or the ADEA, as drafted.

Generally, "[i]n order to show an entitlement to relief, a complaint must contain enough factual material 'to raise a right to relief above the speculative level' on the assumption that all the allegations in the complaint are true even if doubtful in fact," Twombly, 550 U.S. at 555, 127 S.Ct. 1955. Thus, a plaintiff must and is now required to, present allegations that "nudge [her] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Twombly, 550 U.S. at 570, 127 S.Ct. 1955, see also Iqbal, 556 U.S. 662, 129 S.Ct. 1937. To that end, Rule 12(e) of the Federal Rules of Civil Procedure provides that,

> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e). Hence, "[t]he remedy for an allegation lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement." Twombly, 550 U.S. at 590, n. 9, 127 S. Ct. 1985.

In fact, "[o]rdering a more definite statement here is well within the court's powers." Rodriguez-Deynes v. Moreno Alonso, No. CV 16-2986 (PG), 2019 WL 1354030 at *11 (D.P.R. Mar. 22. 2019). "Certainly if the Court cannot reliably identify the basic elements of the *Complaint*, "the court may act under Rule 12(b)(6) or Rule 12(e), whichever is appropriate, without regard to how the motion is denominated." Id. (*citing* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1376 (3d ed. 2004)).

The *Complaint* as drafted fails to identify the medical condition and limited major life activity that renders Plaintiff disabled pursuant to the Rehabilitation Act. The pleadings are also devoid of applicable dates of the adverse employment actions. Most critical, the Rehabilitation Act is vaguely mentioned in the *Complaint*, when alleging that "[t]he referred conduct by defendant constitutes disability discrimination in violation of defendant's own regulations, the Rehabilitation Act and ADA provisions, which makes them liable for the remedies and damages afforded to Lozada under the ADA, including compensatory damages … ." Comp., at p. 12, ¶ 72. Hence, the Court deems that amending the pleadings is the correct remedy at this juncture.

Therefore, an Amended Complaint is to be filed by Plaintiff within the next fourteen (14) days. However, the more definite statement will be limited in scope, namely, Plaintiff will only supplement the pleadings in order to clarify allegations pertaining to the Rehabilitation Act within the applicable time frame pursuant to this *Opinion*. As to the ADA, ADEA and state law claims a dismissal is warranted, hence, can no longer be remedied.

On a final note, Plaintiff's *Opposition* is devoid of applicable case law and properly raised arguments against dismissal. Particularly, Plaintiff failed to properly refute Defendant's

arguments and instead, resorted to copying eight (8) pages of a statute without further discussion in support thereof.

As the arguments raised by the Defendant as to ADEA were not refuted they are now deemed as unopposed. Moreover, Plaintiff failed to refute that she has no recourse under ADA, and instead attempted to establish that the same standards apply to both the Rehabilitation Act and ADA, therefore, "[t]he Court, must treat Plaintiff's claims as arising under the Rehabilitation Act." Docket No. 12 at pp. 3-4. As correctly asserted by the USPS, "[f]ailing to raise a claim in the complaint or to seek leave to amend to include it is fatal, and a party cannot amend his/her allegations through the opposition to a defendant's dispositive motion. See Vergara v. Wesleyan Academy, Inc., No. CV 17-1013 (PG), 2019 WL 4199911, at *19 (D.P.R. September 4, 2019)." Docket No. 15 at p. 3. "It is a well-known fact that '[f]actual allegations made for the first time in a responsive memorandum are not properly considered in evaluating the sufficiency of a complaint under Rule 12(b)(6).'" Camacho Ortiz v. Municipio de San Juan, No. CV 19-1671 (DRD), 2021 WL 1202839 (D.P.R. Mar. 29, 2021) (citing Huertas León v. Colón-Rondón, 376 F. Supp. 3d 167, 183 (D.P.R. 2019)). This type of litigation is discouraged by the Court.

As Plaintiff has no remedies under ADA, in order for the Court to properly consider the elements of an action as to the Rehabilitation Act, the complaint must be amended. Lastly, the Court will not exercise supplemental jurisdiction as to Puerto Rico law claims as it is precluded by law to do so. See discussion supra, Part IV.D at pp. 21-22.

## V.   CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS** the Defendant's *Motion for Partial Dismissal and for a More Definite Statement* (Docket No. 7). Claims as to the American

Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and pursuant to Puerto Rico statutes, are hereby **DISMISSED WITH PREJUDICE.**[3]

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of March, 2022.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge

---

[3] The Court will refrain from issuing a partial judgment at this time. The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. Nichols v. Cadle Co., 101 F.3d 1448, 1449 (1st Cir. 1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); Zayas-Green v. Casaine, 906 F.2d 18, 21 (1st Cir. 1990) ("This final judgment rule . . . furthers 'the strong congressional policy against piecemeal review.'" Id. (*quoting* In re Continental Investment Corp., 637 F.2d 1, 3 (1st Cir. 1980)); Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority, 888 F.2d 180, 183 (1st Cir. 1989); Consolidated Rail Corp v. Fore River Ry. Co., 861 F.2d 322, 325 (1st Cir. 1988); Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 43 (1st Cir. 1988); Santa Maria v. Owens-Ill., Inc., 808 F.2d 848, 854 (1st Cir. 1986)); see also United States v. Nixon, 418 U.S. 683, 690 (1974).