**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**NANCY LOZADA,**

*Plaintiff,*

v.

**LOUIS DEJOY, POSTMASTER GENERAL OF THE U.S. POSTAL SERVICE,**

*Defendant.*

**CIVIL NO. 20-1674 (DRD)**

**OPINION AND ORDER**

Pending before the Court is Defendant, Louis DeJoy, Postmaster General for the United States Postal Service's (hereinafter, "USPS") *Motion to Dismiss Amended Complaint* (Docket No. 28). A *Response in Opposition* thereto was filed by Plaintiff, Nancy Lozada. See Docket No.33. A *Reply* ensued shortly thereafter. See Docket No. 36.

Upon review, and for the reasons stated herein, the Court hereby **GRANTS** the Defendant's *Motion to Dismiss Amended Complaint.* (Docket No. 28).

## I. INTRODUCTION

Originally, Plaintiff filed a civil action for damages pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* (hereinafter, "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and under 29 U.S.C. § 794 in particular, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* (hereinafter, "ADEA"), "for intentional adverse and discriminatory employment actions to which Lozada was subjected by defendants." *Complaint*, Docket No. 1 at p. 1. Essentially, Lozada alleged that she was subject to discrimination

on the basis of her age, (40+) when the Defendant failed to accommodate her in a position in favor of employees younger than 40 years old. As a result thereof, she was retaliated after requesting a reasonable accommodation. See id.

The USPS moved to partially dismiss Lozada's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure "for failure to exhaust administrative remedies prior to filing the above-captioned claim and for failure to state a claim for which relief can be granted." Docket No. 7 at p. 6. In sum, the USPS argued that the Rehabilitation Act is the proper statutory provision under which Plaintiff could raise any claim of discrimination or retaliation based on disability not the ADA. On March 28, 2022, the Court dismissed claims related to the ADA, the ADEA, and declined to exercise supplemental jurisdiction as to Puerto Rico law claims as it is precluded by law to do so. See *Opinion and* Order, Docket No. 16. Plaintiff was also ordered to amend the complaint in order to provide a more definite statement but with the sole purpose of "clarify[ing] allegations pertaining to the Rehabilitation Act within the applicable time frame pursuant to [the Court's] *Opinion*." Id.

Pursuant to the Court's *Opinion and Order*, Lozada amended the pleadings. See Docket No. 21. In sum, Plaintiff seeks damages pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and under section 504, 29 U.S.C. § 794, in particular, "for the intentional adverse and discriminatory employment actions to which Lozada was subjected by defendants." Amended Complaint, Docket No. 21 at p. 1. Lozada further seeks declaratory relief as to the alleged illegality of USPS' actions "in the context of her employment, reinstatement order, compensation for plaintiff's suffering, emotional distress, and moral damages, loss of wages (including back pay), costs, interest, and reasonable attorney's fees." Id. In a nutshell, Lozada

claims that she was subject to discrimination on the basis of her age, (40+) when the Defendant failed to accommodate her in a position in favor of employees younger than 40 years old. As a result thereof, she was retaliated after requesting a reasonable accommodation. See id.

The USPS now moves to dismiss the *Amended Complaint* in its entirety for the following reasons:

1. Plaintiff's Amended Compliant does not comply with the Court's Order and once again, fails to allege she is a qualified individual with a disability.
2. Plaintiff failed to allege a plausible claim of retaliation under the Rehabilitation Act;
3. Plaintiff failed to exhaust administrative remedies regarding a letter she was sent on February 25, 2020, and alternatively, such a letter is not an adverse employment action;
4. The Court lacks jurisdiction to address Plaintiff's accommodation requests under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*

Docket No. 28 at p. 2.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As stated in the *Amended Complaint*, Lozada is a 53-year-old[1] female who was born in June 13, 1969, and is a full-time Carrier Technician for the USPS. Amend. Comp. at ¶¶ 2, 6. On June 11, 2014, Plaintiff suffered an injury to her right ankle while delivering mail. Id. at ¶ 8. Upon partially recovering, she returned to a limited duty job at the Bayamón station, delivering mail on a mounted route. Id. at ¶ 9. By December 4, 2016, Lozada returned to her regular carrier technician assignment, which consisted of five (5) walking routes at the Loíza station. Id. at ¶ 10. As Plaintiff began experiencing pain and discomfort shortly thereafter, she informed the situation to her manager, Erika Vazquez. Id. at ¶ 11. According to Lozada, Vazquez was unable to help her

[1] In the *Amended Complaint*, Lozada alleges to be 51 years old. But, as she was born on 6/13/1969, she is now 53 years old.

because all the routes in the Loíza station are walking routes. Id. at ¶12. Subsequently, Plaintiff visited her doctor who ordered an MRI which revealed a high-grade tear of anterior talofibular ligament and tenosynovitis. Id. at ¶ 13. She continued working until December 23, 2016, when she fell while performing her duties, re-injuring her right ankle, resulting in being placed in a cast until March 2, 2017. Id. at ¶¶ 15-16. A claim was filed as a result thereof. Id. at ¶ 15. The Department of Labor, Office of Workers' Compensations Program ("OWCP") accepted Lozada's claims for benefits on April 12, 2017, and November 8, 2017, respectively. Id. at ¶¶ 20-27. Plaintiff began receiving treatment with a doctor that worked with OWCP cases and who agreed to treat her injuries on April 16, 2018. Id. at ¶ 30. Between then and November of 2018, Plaintiff allegedly attempted to return to work with limited duties by requesting a reasonable accommodation through Mayra Mendoza. Id. at ¶¶ 31-37. However, Vega Baja Postmaster, Carlos Cabrera informed Lozada that he was unable to offer her any work considering her doctor's Duty Status Report, Form CA-17. Id. at ¶¶ 36-37. Although Plaintiff claims that she has made multiple unsuccessful attempts to obtain a work accommodation, on March 20, 2019, she received an Offer of Modified Assignment to work a (2.5) hour shift at the Loíza Station, but instead requested a reassignment to the Vega Baja office, as it is closer to her home. Id. at ¶¶ 41-44. Specifically, Plaintiff requested a reassignment transfer to the Vega Baja Office as an FTR sales/services, distribution associate, Level 6 position. Id. at ¶ 44. But on October 2, 2019, she was denied the position because of her "unacceptable attendance, work and safety record." Id. at ¶ 45.

Plaintiff's discrimination claims stem from the fact that the USPS has allegedly hired or converted to regular, multiple employees at the Vega Baja Post Office after her injury, and most

of them are under 40 years of age. Id. at ¶¶ 48, 53[2]. On August 13, 2019, Plaintiff was invited to an Accommodation Meeting with the Case Caribbean District Reasonable Accommodation Committee (hereinafter, "DRAC"). Id. at ¶ 54.

Eventually, Plaintiff made initial contact with the USPS' EEO counselor on November 4, 2019 (*see* Docket No. 28, Exhibit No. 1 at p. 3) and as a result thereof, on December 20, 2019, she filed a formal complaint to the Post Office's EEO. Amend Comp. at ¶ 55; see also, Docket No. 28, Exhibit 1 at p. 3.[3] In the EEO Complaint, the following claims as to discrimination based on sex (female), age, retaliation, and disability were raised:

1) Beginning on March 10, 2017, she did not receive compensation from the Office of Workers Compensation Program (OWCP).
2) On August 7, 2017, she received a letter stating effective February 22, 2017, her health benefits would be cancelled.
3) In October of 2018, she was not told there was no work available within her restrictions.
4) On October 2, 2019, she received notification that the modified job offer as a clerk in Vega Baja was denied due to her attendance and safety record.

See Docket No. 28, Exhibit No. 2 at pp. 1-2. On January 9, 2020, the EEO issued a *Partial Acceptance/Partial Dismissal of Formal EEO Complaint* accepting only Claim Four for investigation. Claims One, Two and Three were deemed untimely as Plaintiff failed to seek EEO counselling within 45 days of the event which led to the complaint. Likewise, Claims One and Two

[2] As Lozada no longer has an ADEA claim due to dismissal, the employee comparison table is irrelevant, thus, will not be considered for purposes of this *Opinion and Order*. *See* Docket No. 16.

[3] Generally, among the documents that may be considered as part of a motion to dismiss for failure to state a claim, by exception, are "documents the authenticity of which are not disputed by the parties, official public records, documents central to plaintiff's claim, or documents sufficiently referred to in the complaint." Blue Ocean Int'l Bank LLC v. Golden Eagle Cap. Advisors, Inc., 408 F. Supp. 3d 57, 61 n. 2 (D.P.R. 2019) (*citing* Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)). Therefore, the Court may consider the exhibits produced by the Defendant, as they consist of Plaintiff's administrative records which are documents relied upon or incorporated by reference in the *Complaint*, as well as contained in Plaintiff's official record with the USPS.

were also dismissed for lodging an impermissible collateral attack on another forum, namely, the DOL's OWCP and the OPM, respectively. Id. at pp. 6-7. Although the document advised that "[i]f you do not agree with the defined accepted issue(s), you must provide a written response specifying the nature of your disagreement within seven (7) calendar days of receipt of this letter to the EEO Services Analyst . . .," Plaintiff failed to do so.

Lastly, after filing the EEO complaint, Lozada alleges to have received a letter dated February 25, 2020 from the District Office stating that she has been absent since December 24, 2016, and that she should indicate the type of leave she had requested. Amend. Comp., at ¶ 57. Lozada claims that "[t]his is also an adverse employment action within the scope of the Rehabilitation Act, as well as a clear act of retaliation." Id.

According to Lozada, multiple employees have been hired or transferred to the Vega Baja station after she filed her EEO complaint. See Docket No. 21 at ¶ 60. However, on June 18, 2020, she was informed by Edgar Quiles, Manager of the Loíza CCU Station that there are no possible reasonable accommodations for her "without violating the governing collective bargaining agreement." Id. at ¶¶ 58-59.

Moreover, Plaintiff claims that she has never violated any procedures and the USPS has no disciplinary procedures against her. Id. at ¶ 61. Quite the opposite, according to Lozada, she has an unblemished personnel record, her job performance was exemplary, and never was subject of unsatisfactory reports or negative evaluations from any of her immediate supervisors. Id. at ¶ 62. She instead attributes her absences to her inability to work due to her injuries and to the Defendant's alleged inaction in providing her with an accommodation. Id. at ¶ 47.

Considering the aforementioned, Plaintiff filed the instant suit for disability, age discrimination and retaliation seeking compensatory damages, backpay, reinstatement, and attorney's fees and costs. Lozada claims to be a qualified disabled individual who was subject to discrimination by USPS failing to provide her with a reasonable accommodation. Id. at ¶¶ 69-70. Specifically, the USPS deliberately ignored Plaintiff's condition, a disability as defined by the Rehabilitation Act, which was informed and known by the Defendant. Id. at ¶ 75. In fact, Plaintiff claims that requiring an accommodation is protected conduct for purposes of the Rehabilitation Act's retaliation provision. Id.

Although Plaintiff is also seeking relief for punitive damages (id at ¶ 78), such claims must be discarded, as punitive damages are not recoverable against the "government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1). More specifically, sister court for the District of Maine has found that "the Postal Service is 'part of the Government', [and] [] is entitled to § 1981a(b)(1) immunity." Oakstone v. Postmaster Gen., 397 F. Supp. 2d 48, 61 (D. Me. 2005).

## III. LEGAL STANDARD

### *A. Federal Rule of Civil Procedure 12(b)(1)*

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." (citations omitted). Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir.2002). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." 285 F.3d at 150.

Rule 12(b)(1) provides that a complaint will be dismissed if the court lacks subject matter jurisdiction. It is settled that the standard followed by the court when considering a dismissal

request under Rule 12(b)(1), is that the court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir.1998), as restated in Rolón v. Rafael Rosario & Associates, Inc., et al., 450 F.Supp.2d 153, 156 (D.P.R.2006). Moreover, [m]otions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6)." De Leon v. Vornado Montehiedra Acquisition L.P., 166 F. Supp. 3d 171, 173 (D.P.R. 2016); see Negrón-Gaztambide v. Hernández Torres, 35 F.3d 25, 27 (1st Cir. 1994). As such, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

To determine jurisdiction under Rule 12(b)(1), the court may also review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other subsection of Rule 12(b). Once the jurisdiction of the court is challenged by the defendant through a motion to dismiss, "it is plaintiff's burden to establish that the court has jurisdiction." Rolón, *supra*.

More importantly, "Federal Courts are courts of limited jurisdiction," Rolón, 450 F.Supp.2d at 156, thus, "this Court has the responsibility to police the border of federal jurisdiction" Spielman v. Genzyme Corp., 251 F.3d 1 (1st Cir.2001), and "must rigorously enforce the jurisdictional limits [standards] that Congress chooses, Del Rosario Ortega v. Star Kist Foods, 213 F.Supp.2d 84, 88 (D.P.R.2002)(citing Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1, 3 (1st Cir.1995), as restated in Rolón, 450 F.Supp.2d at 156. See also Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("Federal courts

are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, see Willy v. Coastal Corp., 503 U.S. 131, 136–137, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) [and the collection of cases cited therein] );" Rossello–Gonzalez v. Calderon–Serra, 398 F.3d 1, 15 (1st Cir.2004)("Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case. Bonas v. Town of North Smithfield, 265 F.3d 69, 75 (1st Cir.2001) (citing Irving v. United States, 162 F.3d 154, 160 (1st Cir.1998) (*en banc*)). Thus, we subject the plaintiff's choice of a federal forum to careful scrutiny. Id.)"

A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity, and subject matter jurisdiction. See Valentín v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir.2001). Where subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir.2003). See also Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir.2004). In Valentin v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir.2001), the Court held that Fed.R.Civ.P. 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction," including ripeness, mootness, the existence of a federal question, diversity, and sovereign immunity.

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." (citations omitted). Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir.2002). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." 285 F.3d at 150.

### *B. Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." See Ocasio–Hernandez v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' ") (*quoting* Twombly, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; See e.g. Iqbal, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. See Iqbal, 556 U.S. at 677–679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint [,]" discarding legal conclusions, conclusory statements, and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir.2009) (*quoting* Iqbal, 556 U.S. at 678) (*quoting* Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 556 U.S. at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. Id.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sánchez v. Pereira–Castillo, 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 682 (*citing* Twombly, 550 U.S. at 567).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir.2010) (*citing* Twombly, 550 U.S. at 556); Ocasio–Hernández, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. at 679); See Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotation marks omitted); See Ocasio–Hernández, 640 F.3d at 12 (*citing* Twombly, 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit

has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda–Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert–Rosa v. Fortuño–Burset, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; See Iqbal, 556 U.S. at 681 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); See Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir.2010) (the Twombly and Iqbal standards require District Courts to "screen[ ] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. Ocasio–Hernández, 640 F.3d at 12 (*citing* Sánchez v. Pereira–Castillo, 590 F.3d 31, 49 (1st Cir.2009)).

## IV. LEGAL ANALYSIS

### *A. Plaintiff failed to properly allege to be a qualified individual with a disability*

The Court begins by noting that "[t]he standard for retaliation claims under the Rehabilitation Act is the same as the standard under the ADA." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012). The Rehabilitation Act prohibits discrimination against an otherwise qualified individual based on his disability for an executive agency. See 28 U.S.C.

§§ 791 *et seq.* "[F]ederal statutes barring discrimination based on disability do more than merely prohibit disparate treatment; they also impose an affirmative duty on employers to offer a 'reasonable accommodation' to a disabled employee." Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 19-20 (1st Cir. 2004) (*quoting* García-Ayala v. Lederle Parenterals, Inc., 212 F.3d, 638, 646 n.9 (1st Cir. 2000)). As such, Plaintiff "bears the initial burden of proving each element of [her] claim for disability discrimination." Alvarado v. Potter, 813 F. Supp. 2d at 253.

Specifically, in order "[t]o assert a claim for failure to accommodate under the Rehabilitation Act, [Plaintiff] would have to establish the following: (1) that she suffered from a 'disability' within the meaning of the statute; (2) that she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation; and (3) that, despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for the disability." Calero-Cerezo, 355 F.3d at 20. See Enica v. Principi, 544 F.3d 328, 338 (1st Cir. 2008); Collins v. Antilles Consol. Schools, No. CV 10-1037 (JAG-CVR), 2011 WL 8194765, at *8 (D.P.R. October 19, 2011). Likewise, "[t]o establish a qualifying disability, the plaintiff has the burden of proving 1) that he or she suffers a physical or mental impairment; 2) that the 'life activity' limited by the impairment qualifies as 'major'; and 3) that the limit imposed on the plaintiff's major life activity is substantial." Acevedo v. Potter, No. CV 08-1468 (DRD), 2011 WL 7092592 at *7 (D.P.R. March 23, 2011) (*citing* Rolland v. Potter, 492 F.3d 45, 48 (1st Cir. 2007)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

The "definition of a disability is broad, but by no means unlimited." Signore v. Rhode Island, No. CV 17-526 WES, 2018 WL 3145835, at *1 (D.R.I. June 27, 2018) (*citing* Orr v. City of Rogers, 232 F. Supp. 3d 1052, 1064 (W.D. Ark. 2017). "In fact, several courts have granted motions to dismiss where the plaintiff's alleged disability was not covered by the [Act]." Signore, 2018 WL 3145835 at *1. See, e.g., Zick v. Waterfront Comm'n of New York Harbor, No. CV 11 5093(CM), 2012 WL 4785703, at *5 (S.D.N.Y. Oct. 4, 2012) (holding that "Plaintiff's broken leg is simply not an injury considered a 'disability' under the [Act]."). Therefore, making a "vague assertion" that "Plaintiff's injuries constituted a disability" (Amend. Comp., ¶ 68) will not suffice, as the requirements for disability are clearly prescribed by law. Signore, 2018 WL 3145835 at *1.

Here, the USPS argues that "Plaintiff's disability discrimination claim warrants dismissal because she failed to allege the most basic element: that she suffers from a disability within the meaning of the Rehabilitation Act." Docket No. 28 at p. 7. But in *Opposition*, Lozada argues that "the complaint clearly alleges that [she] suffered two injuries to her ankle that due to these injuries '[her] major life activities like walking, standing and driving have been substantially affected,' and such injury "must therefore be construed as an impairment." Response in Opposition, Docket No. 33 at p. 12.

Yet, the Court finds that Plaintiff's allegations, once again, fall short in establishing that she is a qualified individual with a disability pursuant to the Rehabilitation Act. The amended version of the same allegation in the *Amended Complaint*, has a greater deficiency that the one identified by the Court in its *Opinion and Order*. The Court explains. In the *Original Complaint*, Lozada alleged to have suffered a sprain of the tibiofibular ligament of her right ankle resulting in being "limited from walking and driving for a period of more than six (6) hours." Original

Complaint, Docket No. 1, ¶¶ 20, 45. When the USPS moved for dismissal the first time, the Court found this allegation to be "insufficient to establish a substantial limitation of a major life activity." *Opinion and Order*, Docket No. 16 at p. 14. Specifically, the Court held that,

> [t]aking the allegations in light most favorable to Plaintiff, the Complaint still falls short in establishing a physical impairment which substantially limits a major life activity in Plaintiff's life. Therefore, claims as to disability discrimination fail and must be [] dismissed for failure to state a claim for which relief can be granted.

Id. In sum, the *Original Complaint* "as drafted fails to identify the medical condition and limited major life activity that renders Plaintiff disabled to the Rehabilitation Act." Id. at p. 23.

Plaintiff amended the complaint now claiming that to this day "[she] suffers from a tibiofibular sprain with complex regional pain syndrome, which has been deemed permanent and constitutes a disability within the scope of the Rehabilitation Act." Amend. Comp. at ¶ 50. As a result thereof, "major life activities like walking, standing and driving have been substantially affected." Id. at ¶ 51. Yet, Lozada recognizes that she "is able to perform the duties of her position and any similar ones." Id. at ¶ 52. Before, she alleged to be limited in walking and driving for a period of more than six (6) hours but now major life activities like walking, standing, and driving have been substantially affected. This is the crux of Plaintiff's claim, as these allegations seem to be an attempt to parrot the elements of a cause of action under the Rehabilitation Act, and, as such, are insufficient. Ocasio–Hernández, 640 F.3d at 12 (*citing* Sánchez v. Pereira–Castillo, 590 F.3d 31, 49 (1st Cir.2009)). But ultimately, Lozada's allegations fail to sufficiently state how major life activities like walking, standing, or driving have been substantially limited as compared to most people in the general population. Let's see. *See* 29 C.F.R. § 1630.2. Although, a "substantial limitation" is not intended to be a demanding standard, the First Circuit has cautioned that "a

relatively low bar, ... is not the same as no bar at all." Mancini v. City of Providence by & through Lombardi, 909 F.3d 32, 43–44 (1st Cir. 2018).

Likewise, in Twombly, the Supreme Court was specific as to the requirement that the pleadings must "provide the 'grounds' of [her] entitlement to relief' requir[ing] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d. 209 (1986). As such, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.; see 5 C Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Stated otherwise,

> "bare assertions [that] lack any 'factual content that [would] allow [] the court to draw the reasonable inference' that she has a disability under the [Rehabilitation Act]. This deficiency is fatal to her claim, particularly where the Court had previously identified it, and [Plaintiff] failed to rectify it in this latest iteration of her complaint."

Hunter v. Atlanta Pub. Sch., No. 1:18-CV-00869-JPB, 2020 WL 10574760, at *5 (N.D. Ga. Dec. 28, 2020)(citing Traylor v. P'ship Title Co., LLC, 491 F.App'x 988, 989 (11th Cir. 2012).

The Court finds that Plaintiff had plenty of opportunity to correct the deficiencies identified in the *Original Complaint* but chose not to. Considering that Plaintiff received sufficient guidance from the Court as to what was expected pursuant to applicable case law, the disability discrimination claim fails, and is therefore dismissed with prejudice.

***B. Plaintiff failed to raise a plausible retaliation claim pursuant to the Rehabilitation Act***

The Rehabilitation Act makes it "unlawful for employers to retaliate against persons who complain about unlawfully discriminatory employment practices." Noviello v. City of Bos., 398 F.3d 76, 88 (1st Cir. 2005). To make out a prima facie case of retaliation, "a plaintiff must show

that (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action." D.B. ex rel. Elizabeth B., 675 F.3d at 41.

In the *Amended Complaint*, Lozada alleges that "[r]equiring an accommodation is protected conduct for purposes of the Act's retaliation provision." Amend. Comp. at ¶ 75. In addition, Plaintiff alleges that "[i]n retaliation for the legal obligations that arose for defendant under the Rehabilitation Act and under defendant's own regulations, triggered by its knowledge and awareness of plaintiff's disability, defendant has deliberately sat down on her request, and has failed to accommodate her." Amend. Comp. at ¶ 76.

Generally, "[r]equesting an accommodation is protected conduct for purposes of the [Rehabilitation Act's] retaliation provision." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007). However, "[r]equesting an accommodation inevitably carries the possibility that the employer will not honor the request. If the prospect that an employer might not honor the request would deter a reasonable employee from even making the request, reasonable employees would not request accommodation. For this reason, a failure to accommodate cannot constitute retaliation for an employee's request for accommodation. Gomez v. Laidlaw Transit, Inc., 455 F. Supp. 2d 81, 90 (D. Conn. 2006) (emphasis ours); see also Missick v. City of New York, 707 F. Supp. 2d 336, 356 (E.D.N.Y. 2010) (holding that "[d]efendants' alleged failure to accommodate [Lozada's] disability subsequent to an [Act] . . . protected request cannot be bootstrapped into a viable disability retaliation claim.)

Pursuant to the aforementioned, a retaliation claim related to a failure to accommodate is impermissible as a matter of law. The proper avenue would be to file a disability discrimination

claim for failure to accommodate. As such, the retaliation claim for failure to accommodate fails and must be dismissed.

***C. Plaintiff failed to exhaust administrative remedies as to letter dated February 25, 2020***

In the *Amended Complaint*, Lozada claims that "after filing the EEO complaint, she received a letter dated February 25, 2020, from the District Office which states she has been absent since December 24, 2016 and that she should indicate the type of leave she had requested." Amend. Comp. at ¶ 56. Yet, Plaintiff now adds, for the first time that "[t]his is also an adverse employment action within the scope of the Rehabilitation Act, as well as a clear act of retaliation." Id. The USPS in turn argues that "[t]his claim should be dismissed for failure to exhaust administrative remedies and because this letter, in itself, is not an adverse employment action." Docket No. 28 at p. 14.

Generally, an employee must exhaust administrative remedies before filing a discrimination suit before the federal court. The action "may extend as far as, but not beyond, the parameters of the underlying administrative charge. This does not mean that the scope of the suit is inevitably limited to the allegations in the administrative complaint, but it is nonetheless constrained by those allegations in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency." Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005) (internal citations omitted). Failing to do so, deprives the EEOC from its ability to resolve disputes "in the conference room rather than in the courtroom." Id. Therefore, "[i]n order to serve the purposes of the administrative exhaustion requirement—prompt notice to the agency and an opportunity for early resolution, —'the factual statement in [the] written charge should have alerted the agency to [the] alternative basis of discrimination' that the plaintiff raises

for the first time in court." Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 71 (1st Cir. 2011) (internal citations omitted).

"The purpose of the exhaustion of administrative remedies requirement is 'to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation.'" Hernandez-Stella v. Shinseki, 978 F. Supp. 2d 105, 112 (D.P.R. 2013) (*citing* Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir.1996)). Therefore, "creating a dispute resolution system that requires a complaining party to pursue administrative relief prior to court action, [] encourag[es] [a] quicker, less formal, and less expensive resolution of disputes within the Federal Government and outside of court." West v. Gibson, 527 U.S. 212, 218–19, 119 S. Ct. 1906, 1910, 144 L. Ed. 2d 196 (1999). The prerequisite of exhaustion of remedies is even more determinative as to federal employees. Specifically, the First Circuit has held that "[t]his exhaustion requirement is no small matter; it is a condition to the waiver of sovereign immunity and thus must be strictly construed." Vazquez-Rivera v. Figueroa, 759 F.3d 44, 48 (1st Cir. 2014) (*citing* Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 94, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

"Similarly, the Rehabilitation Act requires exhaustion of administrative remedies for employees of federal agencies. This requirement is derived from 29 U.S.C. § 794a(a)(1), providing that federal agency employees must exhaust administrative remedies in accordance with the requirements of Title VII." Hernandez-Stella, 978 F. Supp. 2d. at 112 (*citing* Roman-Martinez v. Runyon, 100 F.3d 213, 216, (1st Cir. 1996). In fact, "[t]he Rehabilitation Act does not establish its own procedures for claims of discrimination brought under Section 501, 29 U.S.C. § 791. … Rather, it incorporates the procedures set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; Murphy v. Mattis, No. 2:14-CV-00400-JAW, 2017 WL 1157086, at *27 (D. Me.

Mar. 27, 2017) (*citing* Vazquez-Rivera v. Figueroa, 759 F.3d 44, 47 (1st Cir. 2014). For that reason, "[f]ederal employees alleging discrimination in violation of … the Rehabilitation Act … must follow the process outlined in 29 C.F.R. §§ 1614.101-1614.110." Hernandez-Stella, 978 F.Supp.2d. at 113. "Failure to exhaust [administrative remedies] bars a federal employee's Rehabilitation Act claims against the federal agency." Id. at 112 (emphasis ours). Lastly, the proper vehicle when seeking dismissal for failure to exhaust administrative is through motions to dismiss for failure to state a claim. See Carter v. Carson, 241 F. Supp. 3d 191, 195 (D.D.C. 2017), *aff'd*, 715 F. App'x 16 (D.C. Cir. 2018).

Pursuant to the *Amended Complaint*, Plaintiff failed to timely exhaust administrative remedies within the time frame provided by 29 C.F.R. § 1614.105. In spite of the fact that Lozada claims to have been discriminated and retaliated against when she received the February 25, 2020 letter, there is no evidence on file that she informed said event the EEO counselor within 45 days of the event as required.

In addition, the *Partial Acceptance/Partial Denial Letter* dated January 9, 2020 served as notification of Lozada's chance to amend the defined accepted issue. See Docket No. 28, Exhibit No. 2. Specifically, Plaintiff was informed that, "[s]hould [she] seek to amend the complaint, the amendment will extend the time of processing an additional 180 days from the date of the amendment with the total allowable time for processing the complaint and all amendments no more than 360 days." Id. at p. 7. Yet, Plaintiff did neither. There is no record in Lozada's administrative record that she contacted the EEO Counselor to add new allegations to the complaint and she did not file a separate EEO complaint after receiving the February 25, 2020 letter. The Court explains in detail.

Importantly, "[a]n aggrieved person must initiate contact with an [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within said time frame of the effective date of the action." 21 C.F.R. § 1614.05(a)(1). Failure to contact the EEOC Counselor within said 45 days prevents the employee from bringing a claim in court. See Velazquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000); see also, Roman-Martinez v. Runyon, 100 F.3d 213, 216-18 (1st Cir. 1996) (holding that an employee's failure to contact an EEOC counselor within the proscribed statute of limitations results in losing his right to later pursue an action in court).

Discrete acts of discrimination have been defined as "events [which] constitute specific employment occurrences with the potential for concrete adverse consequences on plaintiff's employment status." Rojas v. Principi, 326 F. Supp. 2d 267, 276 (D.P.R. 2004). Title VII claims are based on discrete acts of discrimination, such as, "failure to renew contract, failure to hire for new position, suspensions from employment, deprivation of duties, failure to select plaintiff for unannounced employment positions, written counseling, and proposed admonishments and reprimands." Lugo v. Avon Prod., Inc., 777 F. Supp. 2d 275, 287 (D.P.R. 2011).

Several principles are applicable, for instance: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002). Furthermore, "[t]he existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are

themselves timely filed." Id. at 106. Nonetheless, "this time period for filing a charge is subject to equitable doctrines such as tolling or estoppel. Courts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly." *Id.* (internal citations omitted) (emphasis ours).

Essentially, "[a]n employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice of the needed accommodation. If the request is refused, the refusal is a discrete discriminatory act triggering the statutory limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 129 (1st Cir. 2009) (internal citations omitted) (emphasis ours). "By contrast, the denial of a disabled employee's request for accommodation starts the clock running on the day it occurs." Id. at 130. But ultimately, the Code of Federal Regulations clearly provides that "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614-106(d). Yet, even when Lozada was represented by appearing counsel during the administrative stage, she did not preserve her right to seek redress.

As previously mentioned, Plaintiff failed to comply with this regulation as to the alleged discrimination and retaliation related to the February 25, 2020 letter, which in turn, deprived the agency of the opportunity to investigate this claim, and as such, must be dismissed. Specifically, Lozada's administrative record is devoid of any contact to the EEO Counselor related to the February 25, 2020 letter. Upon 45 days of receiving the letter, Plaintiff is unable to seek redress as to said instance. See Docket No. 28, Exhibit No. 1. Stated otherwise, any claim subsequent to the 45 days after the receipt of the letter, namely, April 10, 2020, is untimely. Therefore, upon

evaluating the *Amended Complaint*, the Court finds that allegations related to the February 25, 2020 are time barred, and as such, must be dismissed. "In finding that Plaintiff has failed to exhaust her administrative remedies, the Court is also influenced by Plaintiff's failure, when she was represented by counsel, to voice any disagreement with the framing of the issue by the EEO …" Sellers v. U.S. Dep't of Def., C.A. No. 07-418S, 2009 WL 559795, at *13 (D.R.I. Mar. 4, 2009).

***C. The Court is devoid of jurisdiction to address accommodation pursuant to FECA***

The Federal Employees Compensation Act (hereinafter, "FECA") "is a federal workers' compensation scheme designed to provide redress for work-related injuries." Gill v. United States, 471 F.3d 204, 205 (1st Cir. 2006). The Act specifically provides that "[t]he United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from a personal injury sustained while in the performance of his duty." 5 U.S.C. § 8102(a).

Meanwhile, the Secretary of Labor is conferred upon the administration and deciding all questions arising thereunder. See 5 U.S.C. § 8145. In fact, "[t]he Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application." 5 U.S.C. § 8128(b). For instance, the Secretary of Labor may "(1) end, decrease or increase the compensation previously awarded; or (2) award compensation previously refused or discontinued." Id. But the decision of the Secretary of Labor or his designee allowing or denying a payment is "(1) final and conclusive for all purposes and with respect to all questions of law and fact; and; (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." Id. (emphasis ours). FECA, in turn, is administered by the Department of Labor's Office of Workers' Compensation Programs ("OWCP"), which provides for limited duty

jobs to accommodate employees with compensable job-related injuries. Quarrick v. Brennan, No. 2:17-CV-00685, 2019 WL 5578890, at *5 (W.D. Pa. Oct. 29, 2019); see 20 C.F.R. § 10.507. OWCP's Director and his or her designees "have the exclusive authority to administer, interpret and enforce the provisions of the Act." 20 C.F.R. § 10.1.

As such, liability under FECA is "exclusive and instead of all other liability of the United States ... to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages. Id. ¶ 8116(c). Likewise, FECA's exclusive liability provision was "designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-94, 103 S. Ct. 1033, 1036, 74 L. Ed. 2d 911 (1983). The ultimate goal: "employees are guaranteed the right to receive immediate, fixed benefits regardless of fault and without need for litigation, but in return they lose the right to sue the Government." Id.

"Under the regulatory scheme created by the Department of Labor, ... the USPS has certain obligations towards injured workers who are eligible to receive benefits from the OWCP. If the OWCP accepts the claim of an injured employee with permanent partial restrictions, then the USPS must find work for that employee consistent with that employee's restrictions." Sharpe v. Henderson, No. CV-00-71-ST, 2001 WL 34039485, at *12 (D. Or. Oct. 19, 2001)[4]. Meanwhile, [i]f the OWCP rejects the worker's compensation claim of an injured employee, then the USPS is

[4] "If the employee can perform restricted or limited duties, the employer should determine whether such duties are available or whether an existing job can be modified. If so, the employer shall advise the employee in writing of the duties, their physical requirements and availability." 20 C.F.R. § 10.507.

no longer bound by the obligations of the Department of Labor, but must comply only with the Rehabilitation Act." Id. at *13.

"Accordingly, pursuant to FECA, USPS employees who temporarily cannot perform their duties due to serious illness or injury may be eligible for a 'limited duty' assignment, which permits such employees to continue working in a functional capacity as long as they do not exceed their physical limitations." Quarrick, 2019 WL 5578890, at *5 n. 2. The USPS meets the obligation conferred by FECA, through "a specifical classification of modified jobs," such as "tasks that are subfunctions, and not essential functions, of an existing position, and are specifically tailored for the injured employee . . ." Sharpe, 2001 WL 34039485 at * 12. "In other words, 'limited duty assignments are meant to be permanent work assignments that are given to employees who are no longer capable of performing the essential functions of their jobs, and whose workers' compensation claims have been accepted by OWCP.'" Gonzalez Tomasini v. United States Postal Serv., No. CV 17-1552-MEL, 2022 WL 2820073 at *7 (D.P.R. July 19, 2022)(quoting Sizemore v. Potter, 2008 WL 11514999 at *1 (N.D. Ill. Apr. 18, 2008). In sum, "because a limited duty assignment by nature thwarts the 'essential functions' element of the reasonable accommodation claim under the Rehabilitation Act, limited duties are a remedy only available under FECA and cannot qualify as a reasonable accommodation under the Rehabilitation Act." Id.

Moving on. As previously explained in detail, the Rehabilitation Act imposes "an affirmative duty on employers to offer a 'reasonable accommodation' to a disabled employee." Calero-Cerezo, 355 F.3d at 20. In order to be considered a "qualified individual" pursuant to the Rehabilitation Act, "[P]laintiff must show first that she possessed the requisite skill, experience,

education and other job-related requirements for the position, and second, that she is able to perform the essential functions of the position with or without a reasonable accommodation." Id. at 22. Specifically, "[a] reasonable accommodation is a change in workplace conditions that would enable an employee to perform the essential functions of her job. Such an accommodation, though, must be feasible for the employer. The reasonableness of any proposed accommodation, including its feasibility, must be assessed on a case-by-case basis." Vazquez-Jimenez v. Evertec Grp., LLC, 470 F. Supp. 3d 155, 159 (D.P.R. 2020); see 29 C.F.R. § 1630.2(o)(1)(ii). But it is Plaintiff who has the burden to demonstrate that the accommodation "effectively enable[s] her to perform her job," and that it is "reasonable." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001). However, "[a] reasonable request for an accommodation must in some way consider the difficulty or expense imposed on the one doing the accommodating." Id. at 259.

Therefore, the term "reasonable accommodation" may include job restructuring [and] part-time or modified work schedules. However, the [Rehabilitation Act] does not require an employer to reallocate job duties in order to change the essential function of a job." Soto-Ocasio v. Fed. Exp. Corp., 150 F.3d 14, 20 (1st Cir. 1998) (internal quotations omitted). "Nor is an employer required to provide an accommodation that removes an essential function of the position. Charette v. St. John Valley Soil & Water Conservation Dist., 332 F. Supp. 3d 316, 359 (D. Me. 2018); see Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 81 (1st Cir. 2010). Fundamentally, "[t]he [Act] d[oes] not require [the employer] to assign Plaintiff to "light duty." . . . [I]t is well-settled that employers need not exempt employees from performing essential

functions of their jobs." Thomas v. Trustees of Univ. of Pennsylvania, No. CV 17-5194, 2020 WL 374615, at *7 (E.D. Pa. Jan. 23, 2020).

Here, the USPS argues that Plaintiff in the *Amended Complaint* impermissibly "includes several allegations about the loss of health benefits and hurdles in the process of obtaining medical treatment for her ankle injuries," as those actions or omissions "are not attributable to Defendant and are irrelevant to her claims of discrimination and retaliation." Docket No. 28 at p. 18. For instance, Lozada refers to the limited duties under FECA after her worker's compensation claim was approved by the OWCP. She also referred to the CA-17 Form from FECA, and the modified duty assignment offer she received.[5] Yet, Plaintiff remains silent as to this argument in her *Opposition*. *See* Docket No. 33.

Nevertheless, based on the aforementioned, the Court is barred from entertaining failure to accommodate claims pursuant to FECA. The OWCP is in charge of determining the suitability of the accommodation offered by the employer and its "determinations and awards … with respect to claims of employees can be appealed to the Employees' Compensation Appeals Board ("ECAB"), an appellate arm of the [DOL]." Crane v. Sec'y of Lab., 683 F. App'x 813, 814 (11th Cir. 2017) (citing 5 U.S.C. § 8149; Woodruff v. U.S. Dep't of Labor, OWCP, 954 F.2d 634, 637 (11th Cir. 1992)). Any objection to a modified duty assignment must be made through the OWCP and appeals must be made through the ECAB. See Broughton v. United States, No. 18-573C, 2018 WL 5307677, at *4–5 (Fed. Cl. Oct. 26, 2018), *aff'd*, 767 F. App'x 991 (Fed. Cir. 2019) Accordingly, "[a]n OWCP decision to award or deny compensation to an employee and the factual findings and conclusions of law of the OWCP or ECAB are not subject to judicial review." Guice v. Perez,

[5] See e.g., ¶¶ 20, 27, 36-37, 39 and 43.

No. 8:15-CV-2935-T-27TBM. 2016 WL 11578725 at *2 (M.D. Fla. Feb. 1, 2016) (citing 5 U.S.C. § 8128(b).

By the same token, "a request for limited duty to which an OWCP claimant would be entitled under FECA cannot be deemed a 'reasonable accommodation' request under the Rehabilitation Act." Docket No. 28 at p. 22; see Sharpe, 2001 WL 34039485 at *16. Essentially, an OWCP claimant is not required to perform essential duties of her job, as the limited duty accommodations available through FECA eliminate essential functions from a claimant's position so that returning to work is feasible making her ineligible for reliefs available through the Rehabilitation Act. Limited duties pursuant through FECA may include reallocating the claimant's duties which courts have repeatedly found unreasonable under the Rehabilitation Act. Whereas, a "reasonable accommodation" pursuant to the Rehabilitation Act requires that the claimant is able to perform the essential duties of the job even if it is on a modified schedule. Thus, "decisions concerning the suitability of federal agency job offers to partially disabled employees have been exclusively committed to the Secretary of Labor under the FECA and cannot be collaterally attacked or reviewed under the Rehabilitation Act. Luellen v. Henderson, 54 F. Supp. 2d 775, 783 (W.D. Tenn. 1999).

If Lozada failed to object to the modified duty assignments offered by the USPS, her sole recourse would have been seeking the OWCP review and appeal the adverse determination before the ECAB. Failing to do so constitutes an abandonment of her rights under FECA that cannot be remedied through a collateral attack in federal court under the guise of a disability discrimination claim. Attempting to characterize her requests for limited duty under FECA as

reasonable accommodation requests under the Rehabilitation Act will not do, as they are inapposite.

Based on the aforementioned, the Court does not have jurisdiction to entertain to Plaintiff's claim that she was not offered a limited duty assignment as a "reasonable accommodation" while on a status covered by OWCP. The Court agrees with the Defendant that "Plaintiff's claims in the *Amended Complaint* prior to the reassignment denial on October 2, 2019 fall 'under the FECA scheme and as such [are] not subject to judicial review.'" Docket No. 28 at p. 24. Therefore, allegations related to Lozada's limited duty assignment are impermissible and are hereby stricken from the *Amended Complaint*.

## V. CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS** the Defendant's *Motion to Dismiss Amended Complaint* (Docket No. 28). Judgment of dismissal is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 9th day of March, 2023.

***S/Daniel R. Domínguez***
Daniel R. Domínguez
United States District Judge